IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| MAGNACHARGE LLC<br><br>                Plaintiff,<br><br>v.<br><br>FRY'S ELECTRONICS INCORPORATED,<br><br>                Defendant. | Civil Action No. 4:21-cv-00130<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Magnacharge LLC ("Magnacharge" or "Plaintiff"), for its Complaint against Defendant Fry's Electronics Incorporated, ("Fry's" or "Defendant"), alleges the following:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, with respect to certain claims of U.S. Patent No. 7,417,402 ("the '402 patent" or "the Asserted Patent Claims").

**THE PARTIES**

2. Plaintiff Magnacharge is a limited liability company organized under the laws of the State of Texas with a place of business at 356 Greenwood Court, Villanova, PA, 19085.

3. Upon information and belief, Fry's is a legal entity organized and existing under the laws of the State of California, with a place of business at 700 E. Plano Pkwy., Plano, TX 75074 and can be served through its registered agent, Phillip L. Sampson Jr., Bracewell LLP, 711 Louisiana Street, Houston, TX 77002-2770.

4. Upon information and belief, Defendant sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services into the stream of commerce that incorporate infringing technology knowing that they would be sold in this judicial district and elsewhere in the United States.

## JURISDICTION, VENUE AND NOTICE

5. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this District and has a regular and established place of business in this District.

8. On information and belief, Defendant is subject to this Court's general and specific personal jurisdiction because Defendant has sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Tex. Civ. Prac. & Rem. Code § 17.042 because Defendant purposefully availed itself of the privileges of conducting business in the State of Texas and in this District, because Defendant regularly conducts and solicits business within the State of Texas and within this District, and because Plaintiffs' causes of action arise directly from each of Defendant's business contacts and other activities in the State of Texas and this District.  Further, this Court has personal jurisdiction over Defendant because it has purposely availed itself of the privileges and benefits of the laws of the State of Texas.

## BACKGROUND

### The Invention

9. On August 26, 2008, the '402 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Non-contact type battery pack charging apparatus." A true and correct copy of the '402 patent is attached hereto as Exhibit A. Jin-Sun Kim and Young-Jun Kim are the inventors (hereinafter "the Inventors") of the '402 patent. Magnacharge is the assignee and owner of the right, title and interest in and to the '402 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

10. The '402 patent resulted from the pioneering efforts of the Inventors in the area of non-contact, magnetic field battery charging. These efforts resulted in the development of a novel method and apparatus for non-contact type battery pack charging for which a patent application was originally filed in Korea in 2002. At the time of these pioneering efforts, the most widely implemented technology used to address battery charging for rechargeable electronic devices was a technology in which the charging terminals of a battery pack come in electrical contact with the charging terminals of a battery pack charging apparatus. In that type of system, as explained in the '402 patent:

> . . . the charging of the battery pack is possible only when the terminals of the battery pack and the battery pack charging apparatus come in correct electrical contact with each other, so that the use of the contact type battery pack charging apparatus is considerably inconvenient. Furthermore, the positions of the charging terminals of the battery pack and the battery pack charging apparatus must be changed according to the various designs of potable [*sic*] devices including potable [*sic*] terminals, so that a problem arises in that dedicated battery pack charging apparatuses corresponding to the locations of the charging terminals of the battery pack.
>
> To solve the problems, a non-contact type battery pack charging apparatus using a magnetic field is provided, as disclosed in Korean Pat. Appl. No. 1999-53492 and Korean Utility Model No. 2001-27153.

>However, in Korean Pat. Appl. No. 1999-53492 and Korean Utility Model No. 2001-27153, a provision for satisfactorily charging battery packs having different charge capacities for a set time is not made, so that a problem arises in that the battery pack charging apparatuses corresponding to the charge capacities must be provided.
>
>Furthermore, even though an inductive load (conductive material) other than a capacitive load is installed on the battery pack charging apparatus, the conventional non-contact type battery pack charging apparatus regards the inductive load as a capacitive load and performs charging operations, so that a problem arises in that unnecessary power consumption is incurred.
>
>. . . Accordingly, the present invention has been made keeping in mind the above problems occurring in the prior art, and an object of the present invention is to provide a non-contact type battery pack charging apparatus, which is capable of satisfactorily charging various battery packs having different charge capacities for an appropriate time and preventing unnecessary power consumption incurred by an inductive load.

(*See* Exhibit A, '402 patent at 1:23-50.)

11. The Inventors conceived of the inventions claimed in the '402 patent to address the aforementioned drawbacks of the prior art. As explained in the '402 patent:

>. . . the present invention has been made keeping in mind the above problems occurring in the prior art, and an object of the present invention is to provide a non-contact type battery pack charging apparatus, which is capable of satisfactorily charging various battery packs having different charge capacities for an appropriate time and preventing unnecessary power consumption incurred by an inductive load.

(*See* Exhibit A, '402 patent at 1:54:60.)

**Technological Innovation**

12. The inventions embodied by the Asserted Patent Claims resolve technical problems related to the development of non-contact, magnetic field battery charging. As recited in the specification associated with the Asserted Patent Claims explain, one of the drawbacks of the prior art is the charging terminals of a rechargeable battery within a portable device (chargeable device) come in electrical contact with the charging terminals of a battery pack charging apparatus (charger).

13. The Asserted Patent Claims do not merely recite the performance of some well-known business practice from the prior art along with the requirement to perform it using generic technology. Instead, the Asserted Patent Claims recite inventive concepts that allow non-contact, magnetic field battery charging, and overcome problems specifically arising out of how to provide non-contact battery charging.

14. In addition, the Asserted Patent Claims recite inventive concepts that improve the functioning of non-contact, magnetic field battery charging.

15. Moreover, the Asserted Patent Claims recite inventive concepts that are not merely routine or conventional use of a generic battery charging system. Instead, the inventions embodied by the Asserted Patent Claims provides a new and novel solution to specific problems related to non-contact, magnetic field battery charging.

16. And finally, the inventions embodied by the Asserted Patent Claims do not preempt all the ways of charging a battery, nor do the Asserted Patent Claims preempt any other well-known or prior art technology.

17. Accordingly, the Asserted Patent Claims recite a combination of elements sufficient to ensure that the claims, in substance and in practice, amount to significantly more than a patent-ineligible abstract idea.

**Commercial Adoption**

18. Because of the significant advantages that can be achieved using the claimed innovations, the '402 patent presents significant commercial value for, and usage by, companies like Defendant.

19. Indeed, the claimed innovations are so substantial that these ideas were implemented through an industry standard that evolved and gained widespread commercial use over the last decade. This industry standard, known as "Qi" ( ), is a wireless charging specification developed for portable electronic devices ("the Qi Specification") by the Wireless Power Consortium ("WPC"). *See* https://www.wirelesspowerconsortium.com/about/about-wpc.

20. The WPC touts that "by ensuring that all Qi-Certified devices work together, regardless of manufacturer, country of origin, version of the standard used, or other factors, the Qi standard ensures a consistent and simple user experience, where a Qi-Certified device placed on a Qi-Certified charger will simply work." *See* https://www.wirelesspowerconsortium.com/qi/. As of the filing of this complaint, WPC represents that more than 3,700 Qi-Certified products are on the global market. *Id*.

21. According to the WPC, products marked as "Qi Certified" have passed rigorous, independent laboratory tests for safety, interoperability and energy efficiency. The WPC also indicates that alternative claims like "Qi compliant," "Qi compatible" or "Works with Qi," suggest that a product might be designed for compliance or compatibility with the Qi Specification, but has not undergone proper Qi certification testing as set by the WPC.

https://www.wirelesspowerconsortium.com/knowledge-base/testing-and-certification/qi-certified-products.html.

22. The Qi Specification parts applicable to this action are reflected in a document titled: "The Qi Wireless Power Transfer System - Power Class 0 Specification - Parts 1 and 2: Interface Definitions," Version 1.2.3, dated February 2017. A PDF copy of this document is available online, at least as of the date of this filing, at: https://www.wirelesspowerconsortium.com/knowledge-base/specifications/download-the-qi-specifications.html.

**Accused Instrumentalities**

23. Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports into the United States certain non-contact, magnetic field battery charging products that are designed to allow wireless charging according to the Qi Specification. There are two types of products involved in the charging of non-contact, magnetic field battery, those are: (i) wirelessly chargeable devices, and (ii) wireless chargers. Any charger that is designed to wireless charge an electronic device pursuant the Qi Specification is referred to herein as an "Accused Charger". Any electronic device that is designed to allow wireless charging of a battery within that device pursuant to the Qi Specification is referred to herein as an "Accused Chargeable".

24. Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports into the United States Accused Charger products.

25. Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports into the United States Accused Chargeable products.

26. Product information displayed on Defendant's website concerning the Accused Chargers and Accused Chargeables is available online, at least as of the time of the filing of the

complaint. *See*

https://www.frys.com/search?search_type=regular&sqxts=1&isFSK=true&cat=&query_string=wireless+charger&nearbyStoreName=false;

https://www.frys.com/search?search_type=regular&sqxts=1&isFSK=true&cat=&query_string=wireless+charging+earbuds&nearbyStoreName=false.

Examples of Defendant's Accused Chargers and Accused Chargeables are identified in Exhibit B hereto. Some of Defendant's Accused Chargers are even identified on the WPC website as Qi-Certified. *See* https://www.wirelesspowerconsortium.com/products

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,417,402

27. The allegations set forth in the foregoing paragraphs are hereby incorporated into this Count I.

28. Upon information and belief, the pairing of an Accused Charger with an Accused Chargeable constitutes direct infringement of at least claim 1 of the '402 patent. This direct infringement based on the Qi Specification is shown in the claim chart attached hereto as Exhibit C. This chart shows that each and every element of claim 1 of the '402 patent is met, either literally or under the doctrine of equivalents, when an Accused Charger is paired with an Accused Chargeable.

29. Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports into the United States both Accused Chargers and Accused Chargeables, thus Defendant is a direct infringer of at least claim 1 of the '402 patent.

30. Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports into the United States Accused Chargers and these Accused Chargers are, upon information and belief, used by Defendant's customers, agents and employees to wirelessly

charge Accused Chargeables, thus making Defendant's customers, agents and employees direct infringers of at least claim 1 of the '402 patent.

31. Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports into the United States Accused Chargeables and these Accused Chargeables are, upon information and belief, wirelessly charged by Defendant's customers, agents and employees using Accused Chargers, thus making Defendant's customers, agents and employees direct infringers of at least claim 1 of the '402 patent.

32. To the extent Defendant continues to make, use, offer to sell, sell, and/or import into the United States Accused Chargers or Accused Chargeables after receiving notice of its alleged infringement of at least claim 1 of the '402 patent, Defendant is liable for contributory infringement and induced infringement. For example, to the extent Defendant's website continues to list Accused Chargers or Accused Chargeables, several weeks after Defendant's receipt of this complaint, it shall be clear that Defendant has the requisite knowledge for its liability as a contributory and inducing infringer. Upon information and belief, Defendant may have had this requisite knowledge prior to its receipt of this complaint, for instance, if Defendant had knowledge of Plaintiff's prior complaints alleging infringement based on the Qi Specification.

33. Upon information and belief, Defendant's continued making, using, offering to sell, selling, and/or importing into the United States Accused Chargers or Accused Chargeables. after receiving notice of its alleged infringement makes Defendant liable for inducing infringement under 35 U.S.C. § 271(b) because (among other things) Defendant's continued making, using, offering to sell, selling, and/or importing into the United States Accused Chargers with specific intent or willful blindness that such Accused Chargers are to be paired with

Accused Chargeables of another, and Defendant's continued making, using, offering to sell, selling, and/or importing into the United States Accused Chargeables with specific intent or willful blindness that such Accused Chargeables are to be paired with Accused Chargers of another, constitute actively aiding and abetting another (e.g., Defendant's customer) to infringe at least claim 1 of the '402 Patent, which (as indicated above and through the chart attached hereto) constitutes direct infringement of at least claim 1 the '402 Patent.

34. Upon information and belief, Defendant's continued making, using, offering to sell, selling, and/or importing into the United States Accused Chargers or Accused Chargeables after receiving notice of its alleged infringement makes Defendant liable for contributory infringement under 35 U.S.C. § 271(c) because the Accused Chargers or Accused Chargeables are especially made or adapted for use together in compliance with the Qi Specification, which combined use (as indicated above and through the chart attached hereto) constitutes direct infringement of at least claim 1 of the '402 Patent. Defendant's Accused Chargers and Accused Chargeables are material components for use in practicing the '402 Patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

35. Magnacharge has been harmed by the Defendant's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Magnacharge demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Magnacharge demands judgment for itself and against Defendant as follows:

A. An adjudication that the Defendant has infringed the '402 patent;

B.     An award of damages to be paid by Defendant adequate to compensate Magnacharge for Defendant's past infringement of the '402 patent, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Magnacharge's reasonable attorneys' fees; and

D.     An award to Magnacharge of such further relief at law or in equity as the Court deems just and proper.

Dated: February 11, 2021

DEVLIN LAW FIRM LLC

*/s/ Robert Kiddie*
Robert Kiddie
Texas State Bar No. 24060092
rkiddie@devlinlawfirm.com
Timothy Devlin
tdevlin@devlinlawfirm.com
James M. Lennon
jlennon@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff Magnacharge LLC*